UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

SANDRA A. CAPEK,

        Plaintiff,

    -v-                                  No.  15 Civ. 4155 (LTS)(AJP)

BNY MELLON, N.A.,

        Defendant.

--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiff Sandra A. Capek brings suit against Defendant BNY Mellon, N.A.

("BNY"), asserting claims for discrimination and retaliation under Section 1981 of the Civil

Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), the New York State Human Rights Law,

N.Y. Exec. Law § 296 et seq. (the "NYSHRL"); and the Administrative Code of the City of New

York § 8-107 et seq. (the "City Law").  Defendant has moved to dismiss Plaintiff's first three

causes of action: race discrimination under Section 1981, religious discrimination under the

NYSHRL, and religious discrimination under the City Law.

        The Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

The Court has reviewed carefully the submissions of the parties.[1]  For the following reasons,

Defendant's motion is denied.

---

[1]     In addition to the parties' formal submissions, the Court has received and reviewed a letter from Plaintiff dated March 28, 2016 (docket entry no. 26), and the Defendant's response dated March 29, 2016 (docket entry no. 27.)

<u>BACKGROUND</u>

A summary of the allegations relevant to this motion practice follows.

BNY is a global financial services corporation organized under the laws of Delaware and headquartered in New York.  (Am. Compl. ¶ 7.)  Plaintiff has been employed by BNY and/or its predecessor entities for more than 25 years and has delivered excellent performance during that employ.  (<u>See</u> <u>id.</u> ¶¶ 9-11.)

In 2000, Plaintiff was appointed by the Board of Directors to the title of Senior Vice President of Investments at BNY.  (<u>Id.</u> ¶ 12.)  In 2006, Plaintiff was recruited to join the Mellon Private Asset Management Group, now BNY Mellon Wealth Management (the "Wealth Management Group") as a Senior Director.  (<u>Id.</u> ¶ 14.)  In the nine years that Plaintiff has been in the Wealth Management Group, she has brought in approximately $400 million dollars in assets, and since joining the firm, she has successfully brought in over $1 billion in assets.  (<u>Id.</u>)

In support of her discrimination claims, Plaintiff alleges that "[i]n the mistaken belief that [she] is Jewish, she was required by her managers to cultivate clients in Jewish communities."  (<u>Id.</u> ¶ 3.)  Plaintiff alleges that in early 2013, her then-manager, James Fagan, repeatedly stated that he wanted her to work with a Jewish portfolio manager for certain geographic areas with large Jewish communities.  (<u>Id.</u> ¶ 15.)  Plaintiff alleges that "in one instance, Fagan insisted that a Jewish Portfolio Manager be selected to work with Capek on a potential client because Fagan perceived the potential client as being Jewish because he had a Jewish last name."  (<u>Id.</u> ¶ 16.)  Plaintiff alleges that, in another instance, "defendant gave a non-Jewish lead to one of Capek's non-Jewish colleagues, rather than to Capek, whom defendant believed to be Jewish.  As a result, Capek lost significant incentive pay in 2013."  (<u>Id.</u> ¶ 17.)

In or about March or April 2013, Plaintiff complained to Fagan about what she

perceived to be unlawful assignments and, in particular, that she was uncomfortable with "that type of profiling." (Id. ¶ 18.)  In August 2013, when Plaintiff persisted in her complaints, Fagan did not deny her complaint of discriminatory profiling nor suggest "that his decision to assign certain people to certain accounts or markets was based on any factors other than being Jewish or male." (Id. ¶ 19.)  Rather, he justified his conduct by stating that he makes decisions based on what he believes will be "a good fit" for the client and that there are "cultural sensitivities in the buying environment." (Id.)  Plaintiff alleges that, when Fagan eventually realized that Plaintiff was not Jewish, he responded, "all this time I thought you were Jewish." (Id.)  At one point in August 2013, Fagan became dismissive of Plaintiff and said that he "did not have time" to listen to her complaints regarding assignments based on religion or gender. (See id. ¶¶ 20-21.)

Plaintiff then called the firm's Ethics Helpline, and explained that "new prospect leads were being assigned based on religion" and that she had been discriminated against "by being assigned only leads from prospective Jewish clients because her manager believed she was Jewish." (Id.)  Plaintiff further alleges that, thereafter, she experienced various forms of retaliation. (Id. ¶¶ 22-31.)

<u>DISCUSSION</u>

Defendant argues that Plaintiff's discrimination claims should be dismissed because "perceived as" claims are not tenable under Section 1981, and that there has been no adverse employment action alleged.  Further, Defendant argues that the Amended Complaint is too vague to support a claim of discrimination under the City Law.

Section 1981 of Title 42 of the United States Code provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a) (LexisNexis 2009).  "To

make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  CBOCS West, Inc. v. Humphries, 553 U.S. 442, 450 (citing 42 U.S.C. § 1981(a)).  Section 1981 and NYSHRL claims based on alleged employment discrimination are generally evaluated in the same manner as a Title VII claim, see Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010); claims under the City Law require separate analysis, Mihalik v. Credit Agricole Cheuvreux N. America Inc., 715 F.3d 102, 109 (2d Cir. 2013).

To establish a prima facie case of race or religious discrimination,[2] a plaintiff must prove that (1) she was a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination based on her membership in the protected class.  Hyunmi Son v. Reina Bijoux, Inc., 823 F. Supp. 2d 238, 242 (S.D.N.Y. 2011); see also Feingold v. New York, 366 F.3d 138, 149, 152 (2d Cir. 2004).  The prima facie case for showing discrimination is an evidentiary standard, not a pleading requirement; at the pleading stage, "a complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

Defendant first argues that Plaintiff cannot sustain a Section 1981 claim because she is not a member of a protected class, but was only mistakenly perceived as such.  Defendant points out that the only district court to have considered the issue in this Circuit concluded that Title VII does not recognize "perceived religion" claims.  Lewis v. N. Gen. Hosp., 502 F. Supp. 2d 390, 401 (S.D.N.Y. 2007).

---

[2]     Only race discrimination is cognizable under Section 1981.  See Durant v. Nynex, 101 F. Supp. 2d 227, 236 (S.D.N.Y. 2000).

Lewis is not binding authority on this Court.  Moreover, in holding that a "perceived religion" claim is not cognizable under Title VII, the Lewis Court focused principally on a textual analysis of Title VII, comparing it to the relevant provision of the Americans with Disabilities Act, in which Congress specifically provided for claims based on a "perceived" disability.  Id.  Although Section 1981 discrimination claims are generally analyzed under the Title VII framework, the statutory language of Section 1981 differs from that of Title VII.  Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1) (LexisNexis 2012).   Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  Lewis' interpretation of Title VII—that the lack of qualifier before "race" means Congress intended to permit discrimination claims based on one's actual race only—does not apply readily to Section 1981's statutory language.  Section 1981's affirmative grant of "the same right . . . as enjoyed by white citizens" is not, on its face, limited to persons who are actually of a race other than white.  An individual misperceived to be a certain race and discriminated against as a result would not be receiving treatment equal to a white citizen.  Cf. DeMatteis v. Easterman Kodak Co., 511 F.2d 306, 312 (2d Cir. 1975) (reversing holding that a white person had no standing to sue under Section 1981 (citing Sullivan v. Little Hunting Park, 396 U.S. 229 (1969)).

Furthermore, the Court finds persuasive the weight of authority in other circuit and district courts, which hold that claims of discrimination based on a mistaken "perception" are cognizable even under Title VII.  See, e.g., Jones v. UPS Ground Freight, 683 F.3d 1283,

1299 (11th Cir. 2012) ("[A] harasser's use of epithets associated with a different ethnic or racial minority than the plaintiff will not necessarily shield an employer from liability for a hostile work environment"); EEOC v. WC&M Enterprises, Inc., 496 F.3d 393, 401 (5th Cir. 2007) ("[A] party is able to establish a discrimination claim based on its own national origin even though the discriminatory acts do not identify the victim's actual country or origin."); Fogelman v. Mercy Hosp. Inc., 283 F.3d 561, 565 (3d Cir. 2002) (where employer refuses to hire applicant perceived to be Muslim, "employer is still discriminating on the basis of religion even if the applicant . . . is not in fact Muslim.  What is relevant is that the applicant, whether Muslim or not, was treated worse than he otherwise would have been for reasons prohibited by [Title VII]."); Boutros v. Avis Rent a Car Sys., No. 10 CV 8196, 2013 WL 3834405, at *7 (N.D. Ill. Jul. 24, 2013) ("Avis cannot seriously contend that it was free to discriminate against Boutros on the basis of his perceived race - Arab - because it was unaware that he was actually ethnically Assyrian."); Wright v. Yacavone, No. 12 CV 27, 2012 WL 5387986, *20 (D. Vt. Nov. 2, 2012) (permitting discrimination claim based on misperceived ethnicity to survive pleading stage).

That an employer discriminates against an employee based on a mistaken belief regarding that employee's race (or any of the characteristics protected under Title VII) does not make the practice less damaging to the employee nor does it make the discrimination itself less worthy of redress.  See Arasham v. Mayor & City Council of Baltimore, 85 F. Supp. 3d 841, 845 (D. Md. 2015) (finding the argument that "[a] wrong guess . . . shields the employer from liability for discrimination that is no less injurious to the employee than if the employer guessed correctly regarding the employee's national origin" to be a "fundamentally abhorrent" one); see also EEOC Compliance Manual § 15-II (2006) ("Discrimination against an individual based on a perception of his or her race violates Title VII even if that perception is wrong.")  Accordingly,

the Court rejects Defendant's argument that Plaintiff's claim cannot proceed because she was merely "perceived" to be a member of a protected class.[3]

Defendant next argues that Plaintiff's claim of discrimination must fail because she has not alleged that she suffered an adverse employment action, a necessary element of a prima face case of employment discrimination.  To constitute an adverse employment action in the context of a discrimination action, an action must cause "a materially adverse change in the terms and conditions of employment."  Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2009) (emphasis in original) (internal quotation marks and citation omitted).  "To be materially adverse, a change in working conditions must be more disruptive than mere inconvenience or an alteration of job responsibilities.  Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  Mathirampuzha, 548 F.3d at 78 (internal quotation marks and citation omitted).

Here, Plaintiff has alleged that she was directed to cultivate Jewish clients and work with a Jewish Portfolio Manager.  There allegations are insufficient, standing alone, to frame a material adverse action claim, as working with the employer's target clientele and with one's fellow employees is within the ordinary scope of employment duties.  However, Plaintiff also alleges that "defendant gave a non-Jewish lead to one of Capek's non-Jewish colleagues,

_____

[3]     The Court notes that the Supreme Court has held that, for the purposes of a discrimination claim asserted under 42 U.S.C. Section 1982, whose relevant language parallels that of Section 1981, individuals of Jewish ancestry are within the protected group because, at the time the statute was enacted, such individuals were considered to be of a distinct race from the white race.  See Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 618 (1987).

rather than to Capek, whom defendant believed to be Jewish.  <u>As a result</u>, Capek lost significant

incentive pay in 2013."  (<u>Id.</u> ¶ 17 (emphasis added)).  This allegation, read in the light most

favorable to Plaintiff supports a reasonable inference that business resulted from that lead and

Plaintiff suffered "significant" diminished pay because of the assignment of that lead based on

improper considerations of race.  Further, it is reasonable to infer that such a loss was materially

adverse in Plaintiff's line of work, since her principal job and compensation were tied to the

generation of new business.  (<u>See</u> Def. Br. 9.)  <u>Cf.</u> <u>Borrero v. Am. Exp. Bank Ltd.</u>, 533 F. Supp.

2d 429, 441 (S.D.N.Y. 2008) (in denial of summary judgment for defendant on issue of whether

alleged retaliatory acts were materially adverse, recognizing that exclusion from client meetings

and business trips "may matter enormously in a business where compensation is tied to an

individual employee's sales revenue, which, in turn, may depend on direct interaction with

clients").  Although Plaintiff has not identified the specific client or explained why Plaintiff

believes that she was entitled to the lead, Plaintiff is entitled to the benefit of reasonable

inferences at the pleading stage and "a complaint need only include a short and plain statement

of the claim showing that the pleader is entitled to relief."  <u>Swierkiewicz</u>, 534 U.S. at 516.

Accordingly, Defendant's motion is denied as to the Section 1981 and NYSHRL claims.

Defendant also moves to dismiss Plaintiff's City Law claim, arguing that

Amended Complaint is too vague to support a claim of discrimination, for substantially the same

reasons that it argued in connection with Plaintiff's federal and state claims.  The City Law

provisions must be "construed broadly in favor of discrimination plaintiffs," <u>Mihalik</u>, 715 F.3d

at 109 (citation omitted), and do not require that an adverse employment action be "materially

adverse,"  <u>Price v. Cushman & Wakefield, Inc.</u>, 829 F. Supp. 2d 201, 219 (S.D.N.Y. 2011).

Because, as explained above, Plaintiff is not required to plead at the level of specificity

Defendant advocates, see Swierkiewicz, 534 U.S. at 516, and because the City Law is construed more broadly than its federal counterpart, Defendant's motion to dismiss Plaintiff's City Law claim is denied.


<u>CONCLUSION</u>

Defendant's motion to dismiss Plaintiff's First, Second and Third causes of action is denied.  The case remains referred to Magistrate Judge Peck for general pre-trial management. The final pre-trial conference in this case is scheduled for September 9, 2016, at 2:00 p.m.  The parties must confer and make submissions in advance of the conference as set forth in the Pre-trial Scheduling Order (docket entry no. 16.)

This Memorandum Order and Opinion resolves docket entry number 13.


SO ORDERED.


Dated: New York, New York
       May 23, 2016


_/s/ Laura Taylor Swain_
LAURA TAYLOR SWAIN
United States District Judge